UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA

| | |
|---|---|
| Raleigh Sutherland,<br><br>            Plaintiff,<br><br>    v.<br><br>National Republican Congressional Committee,<br><br>            Defendant. | Case No. 1:22-cv-00302 |

CLASS ACTION COMPLAINT

INTRODUCTION

1. Raleigh Sutherland has received **765 spam text messages** involving Winred.com.

2. Winred.com is a platform used by political committees to solicit donations and sell products.

3. Every day, Raleigh gets five to ten more Winred spam text messages that ask for more money or try to sell him more products.

4. Raleigh's phone is inundated with Winred text messages. Every two to three hours he is distracted and annoyed by another SMS notification that is nothing more than another Winred spam text message.

5. Raleigh never agreed to receive these text messages, and he desperately wants the text messages to stop.

1

6. Winred has been sued many times for these unwanted text messages. See, e.g., *Whittaker v. WinRed Technical Services LLC* et al, 3:20-cv-08150 (D. Ariz.); *Reo v. WinRed Technical Services LLC*, 1:20-cv-02509 (N.D. Ohio); *Strange v. Winred Technical Services LLC*, 1:19-cv-01287 (E.D. Va.); *Bartolomei v. Winred Technical Services LLC et al*, 4:20-cv-00271 (E.D. Ark.).

7. In these prior lawsuits, Winred has submitted declarations that it does not send text messages but that the campaigns and committees using its platform send the text messages. See, e.g., *Whittaker v. WinRed Technical Services LLC* et al, 3:20-cv-08150 (D. Ariz.) at Dkt #14-1 ¶¶ 7-9, 13.

8. The set up between Winred and the campaigns using its platform make it impossible to stop the unwanted text messages.

9. Raleigh has replied "stop" to more than 100 of the Winred text messages he has received!

10. But like a game of Whac-A-Mole, once Raleigh replies "stop" to one campaign or committee, he then starts getting spam from another campaign or committee.

11. Like Raleigh, there are *thousands* of people annoyed and frustrated with this unsolicited and unwanted Winred spam that is impossible to stop.

12. Here is just a small sample of complaints taken from Twitter:







13. Like Raleigh, people have not consented to receive these text messages and they want them to stop.

14. Defendant National Republican Congressional Committee ("NRCC") is one such committee that sends text messages to people, including to Raleigh, who have not agreed or consented to receive their text messages.

15. Some of the NRCC text messages directly and explicitly solicit the purchase of consumer products. For example, on October 23, 2022, the NRCC sent Raleigh this text message:

> It's Nikki Haley, Raleigh! I just released my new book ""If You Want Something Done..."" and I want to make sure you have the chance to secure a signed copy. That's why I put (1) signed copy aside for you. But I can only hold it until midnight tonight. Claim Your Signed Copy Here: gopwin.us/wq7j In ""If You Want Something Done..."", I share the stories of strong female leaders who blazed their own trails and dared to be different. This book is the perfect read for any leader who dares to think differently. But you have to hurry - there are only 100 copies available. Claim Your Signed Copy Here: gopwin.us/wq7j stop=end

16. The two URLs in this text message directed Raleigh to a Winred.com sales page where he could get a copy of the book "If You Want Something Done" for $35.

17. The Florida Telephone Solicitation Act ("FTSA") prohibits telephone solicitors from using an automated system to sell consumer goods without first obtaining the prior express written consent of the texted party.

18. But the NRCC does not care. To generate more money, the NRCC spams individuals without first obtaining proper consent.

19. Because of the NRCC's violations of the FTSA, Raleigh brings this action for himself and other similarly situated people in Florida, to enjoin these abusive practices and for damages.

## JURISDICTION AND VENUE

20. This Court has original subject matter jurisdiction pursuant to 28 U.S.C. § 1332(d) because this is a class action in which the controversy exceeds $5,000,000, Raleigh and the class of Plaintiffs are citizens of Florida, and the NRCC is a citizen of D.C.

21. Venue is proper in this district pursuant to 28 U.S.C. § 1391 because a significant portion of the events giving rise to this lawsuit occurred in this district.

## PARTIES

22. Plaintiff Raleigh Sutherland is a citizen of Florida. He has a permanent home in Hawthorne, Alachua County, Florida, and this is where he intends to remain indefinitely.

23. Defendant National Republican Congressional Committee is a citizen of D.C. It is a nonprofit incorporated in D.C. with its principal place of business in D.C.

## FACTUAL ALLEGATIONS

24. Raleigh's home, phone, and privacy have been invaded by NRCC's text messages.

25. Raleigh is the residential subscriber of the cell phone number 585-750-1887. Raleigh uses this number for personal use. Raleigh uses this phone

number at home. Raleigh makes and takes 100% of his personal calls on this phone number.

    26.    The NRCC has knowingly and willfully texted Raleigh at least five times, as follows:

    i.    <u>On October 19, 2022 from 804-905-5335</u>
Raleigh, you were a hot topic of discussion at Republican headquarters today. Behind closed doors, a group of major anonymous donors have carefully considered your dedication to our movement. And they have finally decided... You are eligible for 1300% matching today only! gored22.com/3Rpwxf We need your help to beat the Democrats and win back a Conservative House Majority. And with the election just days away, there's no time to waste. Please don't miss your chance to empower the Republican Red Wave. Chip in and use your 1300% match now: gored22.com/3Rpwxf Thank you, House Republicans stop=end

    ii.    <u>On October 20, 2022 from 804-905-5335</u>
Can't say no to this Raleigh! Anonymous GOP donors will 13x match the next 13 patriots who help them FIRE Nancy Pelosi. 13x match NOW: gopwin.us/w4nf stop=end

    iii.    <u>On October 21, 2022 from 540-408-0358</u>
Raleigh, you were a hot topic of discussion at Republican headquarters today. Behind closed doors, a group of major anonymous donors have carefully considered your dedication to our movement. And they have finally decided... You are eligible for 1300% matching today only! gored22.com/31iNDj We need your help to beat the Democrats and win back a Conservative House Majority. And with the election just days away, there's no time to waste. Please don't miss your chance to empower the Republican Red Wave. Chip in and use your 1300% match now: gored22.com/31iNDj Thank you, House Republicans stop=end

    iv.    <u>On October 22, 2022 from 757-756-1882</u>
Raleigh, it's Jim Jordan. Democrats are outraising us big time and it's putting victory in November in jeopardy. Help me shrink the gap? gopwin.us/36e1 stop=end

      v.      On October 23, 2022 from 757-756-1636
It's Nikki Haley, Raleigh! I just released my new book ""If You Want Something Done..."" and I want to make sure you have the chance to secure a signed copy. That's why I put (1) signed copy aside for you. But I can only hold it until midnight tonight. Claim Your Signed Copy Here: gopwin.us/wq7j In ""If You Want Something Done..."", I share the stories of strong female leaders who blazed their own trails and dared to be different. This book is the perfect read for any leader who dares to think differently. But you have to hurry - there are only 100 copies available. Claim Your Signed Copy Here: gopwin.us/wq7j stop=end

27. The URLs in the text messages direct Raleigh to webpages that said, "Your contribution will benefit NRCC."

28. The footer of the webpages linked to https://www.nrcc.org/ which is owned and controlled by the NRCC.

29. This indicates that the NRCC is the entity initiating the text messages.

30. Raleigh never provided his number 585-750-1887 to the NRCC, never had a relationship with the NRCC, and never gave permission for the NRCC to send any type of communication.

31. The NRCC used a different phone number for each of the text messages. The NRCC did this to avoid getting blocked. This is not something a caller does if they have consent.

32. NRCC initiated at least one text message for the purpose of soliciting the sale of the book "If You Want Something Done" by Nikki Haley.

33. In addition to being sold on Winred.com, the book "If You Want Something Done" is sold at Amazon and Barnes & Noble for $17.12 and $23.99, respectively.

34. Selling products is a core function of Winred.com and the committees using Winred.com.

35. Based upon the trademark filing, the WINRED trademark is used in "promoting and selling merchandise."

36. Winred claims its Zero-Touch Merchandise Solution "has revolutionized how campaigns and organizations use merchandise. Our innovative program makes it easy for campaigns at every level, from Senate to School Board, to offer merch to supporters." https://winred.com/blog/merchandise-game-changer/ (last accessed November 1, 2022).

37. From 2020 to 2021, Winred's merchandise program saw a 62% increase in sales. https://winred.com/blog/winred-processes-170-million-q1-4500-campaigns-on-platform/ (last accessed November 1, 2022).

38. The NRCC has a dedicated storefront on Winred.com with products that consumers can purchase, including hats, shirts, mugs, flags, and more. See https://secure.winred.com/nrcc/storefront (last accessed November 1, 2022).

39. In the last two years, the NRCC has generated over $262 million in revenue, driven in large part by its intrusive, unsolicited text messages. See https://www.opensecrets.org/parties/totals.php?cmte=NRCC&cycle=2022 (last accessed November 1, 2022).

40. The NRCC initiated the text messages using an automated system for the selection or dialing of phone numbers. This is based on the following facts:

    i. Raleigh's legal counsel has two other clients who received *verbatim* the same text message as Raleigh's October 19 and

8

        October 21 text messages. The only difference was the name "Raleigh" was changed in the other text messages, and the URL links had a different tracking id;

  ii.  the text messages provided mechanical opt-out instructions, which is not something an individual does, but instead is something an autodialer does;

  iii.  on October 24, 2022, Raleigh responded "stop" to 757-756-1882 and he immediately received an SMS response that said, "You have successfully been unsubscribed, you will not receive any more messages from this number. Reply START to re-subscribe";

  iv.  on March 11, 2022, Raleigh responded to six different Winred text messages with the question, "Is there somebody I can please talk with?" But nobody ever responded, indicating all Winred text messages are automated; and

  v.  the NRCC's text message are far longer than any person would naturally write when sending a single text message manually.

41. On information and belief, the NRCC has initiated tens of thousands of similar text messages to people in Florida soliciting the sale of books and other consumer goods using an autodialer.

42. The NRCC knew, or had reason to believe, that their text messages to Raleigh were being sent into Florida.

43. The NRCC's text messages addressed Raleigh by name, which indicates they knew who they were contacting.

44. The NRCC knew Raleigh lives in Florida and has a Florida address. The NRCC is a sophisticated fundraiser, generating over $262 million in donations this election cycle. The NRCC uses highly advanced analytics and data that, at a minimum, includes a potential donor's state. The NRCC obtains the information about the location of a potential donor from Winred, voter files, public data sources like Driver's License databases, and/or third-party data providers.

45. In addition to knowing that the text messages to Raleigh were being sent into Florida, the NRCC sends millions of text messages into Florida every year. In the last fourteen years, 10 billion+ Winred text messages have been sent to 50 million+ Americans. See https://www.tatango.com/integrations/winred (last accessed November 1, 2022). Given that Florida is approximately six percent of the entire population, an estimated 600 million+ Winred text messages have been sent to 3 million+ people in Florida. While the NRCC is not the only ones sending the Winred spam, the NRCC is responsible for millions of these text messages.

46. The unwanted spam is incredibly annoying, distracting, and frustrating to Raleigh and the class members. The spam invades their substantive right to privacy, namely the right to be free from unsolicited text messages. The spam causes Raleigh and class members to avoid looking at their phones when it may be important or interrupting other activities to respond to unwanted text messages. The spam reduces their phones' storage and battery life. In short, the spam invades their privacy, diminishes the value of their phones and their

enjoyment of life, and causes a nuisance, an annoyance, and an intrusion into their seclusion.

## LEGAL STANDARD

47.     **Florida Automated Text messages**. "A person may not make or knowingly allow a telephonic sales call to be made if such call involves an automated system for the selection or dialing of telephone numbers to a number called without the prior express written consent of the texted party." Fla. Stat. § 501.059 (8)(a) (cleaned up).

48.     **Telephonic Sales Call**. Telephonic sales call "means a telephone call, text message, or voicemail transmission to a consumer for the purpose of soliciting a sale of any consumer goods or services." Fla. Stat. § 501.059 (1)(j).

49.     **Prior Express Written Consent**. Prior express written consent means "a written agreement" that "clearly authorizes the person making or allowing the placement of a telephonic sales call" to deliver calls or text messages "using an automated system for the selection of dialing of telephone numbers." Fla. Stat. § 501.059 (1)(g).

## CLASS ACTION ALLEGATIONS

50.     Pursuant to Civ. R. 23(b)(2) and 23(b)(3) of the Federal Rules of Civil Procedure, Raleigh brings this action on behalf of himself and the following Class of persons similarly situated in order to remedy the ongoing unlawful practices alleged herein and to seek redress on behalf of all those persons who have been harmed thereby, including injunctive relief.

51.     **Class Definitions**. Raleigh proposes the following Class:

**The Florida Autodialer Class**
All persons (1) who are residents of Florida, (2) to whom the NRCC made or knowingly allowed a telephonic sales call, (3) using the same equipment or type of equipment utilized to solicit Raleigh, (4) since July 1, 2021 through the date of class certification.

52. A member of a class may sue as a representative party if the member satisfies Federal Rule of Civil Procedure 23(a)'s four prerequisites: numerosity, commonality, typicality, and adequacy of representation. Fed. R. Civ. P. 23(a).

53. If Rule 23(a) is satisfied, a putative class representative must also show that the class falls into one of three categories under Rule 23(b). Fed. R. Civ. P. 23(b). For a Rule 23(b)(3) class, a plaintiff must make two further showings. First, a plaintiff must show that questions of law or fact common to class members predominate over any questions affecting only individual class members. *Id*. Second, a plaintiff must demonstrate class action is superior to other available methods for adjudicating the controversy.

54. **Numerosity**. A proposed class satisfies the numerosity requirement if class members are so numerous that joinder of all members would be impracticable. Fed. R. Civ. P. 23(a)(1). The numerosity requirement is not tied to any fixed numerical threshold. In general, courts find the numerosity requirement satisfied when a class includes at least forty members. Here, the Class is so numerous that joinder of all members would be impracticable. The exact size of the Class and the identity of the members are readily ascertainable from business records and likely number in at least the thousands.

55. **Commonality**. A proposed class satisfies Rule 23's commonality requirement if there is at least one question of fact or law common to the class. Fed. R. Civ. P. 23(a)(2). It is not a high standard. The claims must depend upon a common contention such that the determination of its truth or falsity will resolve an issue that is central to the validity of each claim in one stroke. The word 'question' in Rule 23(a)(2) is a misnomer: What matters to class certification is not the raising of common questions but, rather, the capacity of a class-wide proceeding to generate common answers apt to drive the resolution of the litigation.

56. There are questions of law and fact common to the proposed Class, including:

   i. Did they receive text messages from the NRCC?
   ii. Do the text messages constitute telephonic sales calls?
   iii. Did the NRCC use an automated system for the selection or dialing of telephone numbers?

57. **Typicality**. A proposed class representative's claims and defenses must also be typical of the class. Fed. R. Civ. P. 23(a)(3). The Supreme Court has recognized that the commonality and typicality requirements of Rule 23(a) tend to merge. Typicality refers to the nature of the claim or defense of the class representative, and not to the specific facts from which it arose, or the relief sought. Representative claims are typical if they are reasonably coextensive with those of absent class members; they need not be substantially identical.

58. Raleigh's claims herein are typical of those of the Class that Raleigh seeks to represent. Raleigh's and the Class members' claims arise from the same conduct of NRCC.

59. **Adequacy of Representation**. The final prerequisite under Rule 23(a) requires that the Court must be satisfied that the representative party will fairly and adequately protect the interests of the class. Fed. R. Civ. P. 23(a)(4). This overlaps in practice with the requirement under Rule 23(g) that class counsel must adequately represent the interests of the class. Fed. R. Civ. P. 23(g). The inquiry under Rule 23(a)(4) asks two questions: (1) Does the representative plaintiff and their counsel have any conflicts of interest with other class members, and (2) will the representative plaintiff and their counsel prosecute the action vigorously on behalf of the class? Raleigh is an adequate representative of the Class because his interests are common with the interests of the Class, and Raleigh will fairly and adequately protect the interests of the Class by pursuing this matter. Raleigh is represented by counsel competent and experienced in TCPA and class action litigation.

60. **Predominance of Common Questions**. A plaintiff may bring a class action under Rule 23(b)(3) only where questions of law or fact common to the class predominate over questions affecting only individual members. Fed. R. Civ. P. 23(b)(3). If liability can be determined at a class-wide basis, common issues predominate. This is true even if, at the damages stage, there remain non-injured class members and individualized damages calculations are required.

61. **Superiority**. The final determination a court must make to certify a Rule 23(b)(3) class is that class action would be superior to individual actions in fairly and efficiently resolving the claims presented in this matter. Rule 23 enumerates four factors pertinent to determining whether class action is the superior method of litigation. First, the class members' interests in individually controlling the prosecution or defense of separate actions. Fed. R. Civ. P. 23(b)(3)(A). Second, the extent and nature of any litigation concerning the controversy already begun by or against class members. Fed. R. Civ. P. 23(b)(3)(B). Third, the desirability or undesirability of concentrating the litigation of the claims in the particular forum. Fed. R. Civ. P. 23(b)(3)(C). Finally, the likely difficulties in managing a class action. Fed. R. Civ. P. 23(b)(3)(D). Where class-wide litigation will reduce litigation costs and promote greater efficiency, a class action may be the superior method of litigation.

62. In the present suit, the questions of law and fact common to the class members predominate over questions affecting only individual members. A class action is superior to multiple individual suits because it conserves judicial resources, promotes consistency and efficiency of adjudication, and deters illegal activities. The interests of individual members of the Class in individually controlling the prosecution of separate claims against NRCC are small because the damages in an individual action for violations of the TCPA are small. Raleigh is not aware of any litigation concerning this controversy already commenced by others who meet the criteria for class membership described above.

63. Managing this case as a class action should have no significant difficulties. Notice to class members can be provided by mail. The law applicable to each putative class member is identical. The facts are too. Ultimately, the basic questions in this case are the same for all class members. The common answer to these questions will determine the NRCC's liability. Precedent demonstrates these questions can be litigated on a class-wide basis.

## FIRST CAUSE OF ACTION
### Illegal Automated Text Messages to Florida Residents
### (On Behalf of the Florida Autodialer Class)

64. The NRCC violated Fla. Stat. § 501.059 (8)(a) by making or knowingly allowing telephonic sales calls using an automated system for the selection or dialing of telephone numbers to Raleigh and members of the Florida Autodialer Class.

65. Raleigh and members of the Florida Autodialer Class have been damaged and are entitled to an award of $500 in statutory damages for each violation. Fla. Stat. § 501.059(10).

66. The court should award $1,500 in statutory damages for each violation because the violations were knowing and willful. *Id*.

67. The court should award reasonable attorney fees and costs. *Id.* at .059(11).

68. The court should enjoin the NRCC from making or knowingly allowing telephonic sales calls to be made using an automated system for the

selection or dialing of telephone numbers without the prior express written consent of the texted party. *Id*. at .059(10).

## RELIEF REQUESTED

Raleigh respectfully requests the Court grant the following relief against the NRCC:

A. Certification of the proposed Class;

B. Appointment of Raleigh as class representative;

C. Appointment of the undersigned as counsel for the Class;

D. An order enjoining the NRCC as set forth above;

E. An award of damages to Plaintiff and the Class, as allowed by law; and

F. Orders granting such other relief as the Court deems necessary, just, and proper.

## JURY DEMAND

Raleigh requests a jury trial as to all claims of the Complaint so triable.

Dated: November 6, 2022                    Respectfully submitted,

/s/ *John Kauffman*
John Kauffman
Florida Bar No. 538205
LawHQ, P.C.
299 S. Main St. #1300
Salt Lake City, UT 84111
385-285-1090
john.kauffman@lawhq.com

*Attorney for Plaintiff*

17