# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF FLORIDA

RALEIGH SUTHERLAND,
  *Plaintiff*,

v.

NATIONAL REPUBLICAN
CONGRESSIONAL COMMITTEE,
  *Defendant*,

Case No. 1:22-cv-00302-RH-ZCB

Hon. Judge Robert L. Hinkle

## <u>DEFENDANT NATIONAL REPUBLICAN CONGRESSIONAL</u>

## <u>COMMITTEE'S MOTION TO DISMISS AND</u>

## <u>MEMORANDUM OF AUTHORITY</u>

Defendant National Republican Congressional Committee ("NRCC") by and through its counsel of record, hereby MOVES that Plaintiff Raleigh Sutherland's ("Plaintiff's") Class Action Complaint (the "Complaint") be dismissed under Rule 12(b)(1) for lack of Article III standing or alternatively with prejudice under Rule 12(b)(6) for failure to state a claim. Pursuant to N.D. Fla. Loc. R. 7.1(E), Defendant has attached its Memorandum in Support of this Motion below.

Dated: January 17, 2023.

Respectfully submitted,

 /s/ Jason Torchinsky
Jason Torchinsky (VA Bar # 47481)
Holtzman Vogel Baran Torchinsky &
Josefiak PLLC
15405 John Marshall Hwy
Haymarket, Virginia 20169
jtorchinskty@holtzmanvogel.com
(540) 341-8808 (phone)
(540) 341-8809 (fax)

/s/ Gary Perko
Gary Perko (FL Bar # 855898)
119 S. Monroe St. Suite 500
Tallahassee, FL 32301
gperko@holtzmanvogel.com

/s/ Dallin B. Holt
Dallin B. Holt (AZ Bar # 37419)*
Esplanade Tower IV
2575 East Camelback Rd
Suite 860
Phoenix, AZ 85016
dholt@holtzmanvogel.com

*pro hac vice forthcoming

*Attorneys for Defendant National
Republican Congressional Committee*

## MEMORANDUM IN SUPPORT OF NRCC'S MOTION TO DISMISS PLAINTIFF'S CLASS ACTION COMPLAINT

Plaintiff alleges that Defendant violated the Florida Telephone Solicitations Act ("Florida Mini-TCPA"). As an initial matter, the relevant provisions of the Florida Mini-TCPA do not apply to the NRCC's alleged activity here. The NRCC does not sell consumer goods—which are regulated by the Florida Mini-TCPA—but, instead, sells merchandise that is defined as a political contribution under federal law.

An additional problem for Plaintiff is that, taking the allegations in his Complaint as true[1], he has pleaded himself out of a claim under Florida's Mini-TCPA. Specifically, Plaintiff has failed to allege facts sufficient to establish that the NRCC used an Automatic Telephone Dialing System ("ATDS"), which is a required element of Plaintiff's Auto-Dialer claim. Indeed, the facts Plaintiff alleges actually indicate that the NRCC did not use an ATDS, which is exactly what one would expect considering that the NRCC did not use an ATDS here.

What's more, Plaintiff lacks Article III standing to even bring his claims

---

[1] Defendant does not admit to any of Plaintiff's allegations but notes that—for the purposes of a Rule 12 Motion—the Court must accept Plaintiff's well-pleaded factual allegations. *See Grieben v. Fashion Nova, Inc.*, 2022 U.S. Dist. LEXIS 178319, at *4 (S.D. Fla. Sep. 27, 2022) ("When reviewing a motion under Rule 12(b)(6), a court, as a general rule, must accept the plaintiff's allegations as true and evaluate all plausible inferences derived from those facts in favor of the plaintiff." (citing *Miccosukee Tribe of Indians of Fla. v. S. Everglades Restoration Alliance*, 304 F.3d 1076, 1084 (11th Cir. 2002)).

because Plaintiff has not pleaded a sufficient injury. Indeed, the main entity with whom Plaintiff takes qualm—and against whom all of Plaintiffs allegations are directed—is WinRed, an entity that Plaintiff has not even named as a party to this case. Importantly, the injury Plaintiff alleges—annoyance at five text messages—is not concrete enough to confer Article III standing. For these reasons, the Court should dismiss Plaintiff's Complaint.

## I.    <u>INTRODUCTION</u>

On November 6, 2022, Plaintiff filed the putative Class Action Complaint (the "Complaint"), alleging that the NRCC violated Florida's Mini-TCPA statute, Fla. Stat. § 501 *et seq*. (ECF No. 1.) Specifically, Plaintiff alleges that NRCC has used an ATDS to send text messages to Plaintiff without his consent. (*Id.* at ¶¶ 17–18.)

Although Plaintiff alleges that he received 765 text messages involving WinRed (which is not a party to this case), (*id.* at ¶ 1), Plaintiff, by his own allegation, only received five text messages from the NRCC. (*Id.* at ¶ 26.) Similarly, although Plaintiff alleges that he has asked WinRed to stop sending texts more than 100 times, (*id.* at ¶ 9), he alleges that he asked NRCC to stop only once, (*id.* at ¶ 40.iii). Notably, Plaintiff alleges that he sent a "stop" text message on October 24, 2022, (*id.*), and that the last text he received from the NRCC was on October 23, 2022, (*id*. at ¶ 26.v). Thus, according to Plaintiff's own allegations, the NRCC did not text him again after he requested it stop.

Likewise, Plaintiff's alleged facts do not indicate that the NRCC used an ATDS to contact him; they indicate the exact opposite. Plaintiff alleges that (1) the text messages were customized to him, (*id.* at ¶¶ 40, 44) (noting that the text messages with addressed to Plaintiff by name, differing from similar texts that were send to other individuals); (2) that the phone numbers from which the texts were sent utilized a long code[2] (*i.e.*, full nine-digit phone number) as opposed to a short code, (*id.* at ¶ 26) (alleging that each text message some from the NRCC utilized a full nine-digit phone number); and (3) that the NRCC has "highly advance analytics" and has accumulated information on known individuals, as opposed to random numbers that it dials without knowledge of the person being contacted, (*id.* at ¶¶ 43–44) (alleging that the NRCC knew who they were contact and spent great time and resourced to not contact random, uninterested individuals). Though Plaintiff contends that these facts indicate the use of an ATDS, (*id.* at ¶ 40), they actually demonstrate the opposite.

Moreover, Plaintiff does not allege that he wasted time or tangible resources because of the text messages. (*See generally id.*) He does not even allege that he read the text messages. (*See id.*) Indeed, Plaintiff does not allege anything above a mere

---

[2] "A short-code is a six-digit number that allows high-volume, application driver messaging . . . Long-codes are meant for person-to-person communications and can send only 1 message per record; short-codes can send 100 messages per second." *Legg v. Voice Media Grp, Inc.*, 990 F. Supp. 2d 1351, 1354 (S.D. Fla. 2014).

annoyance at receiving the five text messages. Thus, while in one breath Plaintiff opines that he has suffered some catastrophic injury, in the next breath he admits— either overtly or by implication—that there is a relatively small universe of easily ignored text messages that did not affect him in any tangible way, and the NRCC did not send another text message after Plaintiff replied "stop."

Furthermore, much of the Complaint does not even address the NRCC, the named Defendant, but, instead, harangues WinRed—an entity that Plaintiff has not even named as a party to this litigation. (*See generally id.*) (mentioning WinRed more than thirty times throughout the Complaint but failing to name it as a Defendant).

On this flimsy basis, Plaintiff seeks an award of statutory damages. (*Id.* at 17.) For reasons explained below, Defendant asks the Court to dismiss the Complaint and award the NRCC attorney fees.

## II.    **ARGUMENT**

Plaintiff's claims are meritless, both factually and legally. Plaintiff does not have Article III standing because he has not alleged an injury under the Eleventh Circuit's standard for Florida Mini-TCPA claims—or its federal counterpart under the Telephone Consumer Protection Act ("TCPA"). Finally, assuming arguendo that Plaintiff has standing, he has failed to state a claim under the Florida Mini-TCPA because an ATDS was not used, and Plaintiff has not alleged sufficient facts to

indicate that one was used. Both these failures are fatal to Plaintiff's claims.

### A. **Plaintiff's Complaint Must Be Dismissed Because He Lacks Article III Standing.**

Article III limits the jurisdiction of federal courts to "Cases" and "Controversies," *see TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2203 (2021); *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 559 (1992), thereby "confin[ing] the federal courts to a properly judicial role," *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016). The case-or-controversy requirement permits federal courts to exercise their power only for "the determination of real, earnest, and vital controversy between individuals." *Chi. & Grand Trunk Ry. Co. v. Wellman*, 143 U.S. 339, 345 (1892).

To demonstrate standing, the party invoking federal jurisdiction must prove three elements: (1) the plaintiff must have suffered an injury in fact, (2) the defendant must have caused that injury, and (3) a favorable decision must be likely to redress that injury. *Lujan*, 504 U.S. at 560–61. Here, Plaintiff has failed to plead facts to sufficiently establish a concrete injury.

An injury in fact means "an invasion of a legally protected interest" that is both "concrete and particularized" and "actual or imminent, not conjectural or hypothetical." *Id.* at 560 (internal quotation marks and quotations omitted). Relevant here, a concrete injury must be "de facto," meaning "it must actually exist"—it must be "real, and not abstract." *Spokeo*, 578 U.S. at 340 (quotation marks omitted); *see TransUnion*, 141 S. Ct. at 2204.

A "bare procedural violation, divorced from any concrete harm, [cannot] satisfy the injury-in-fact requirement of Article III." *Spokeo*, 578 U.S. at 341; *see also Hunstein v. Preferred Collection & Mgmt. Servs., Inc.*, 48 F.4th 1236, 1243 (11th Cir. 2022). "In particular, a plaintiff does not 'automatically satisf[y] the injury-in-fact requirement whenever a statute grants a person a statutory right and purports to authorize that person to sue to vindicate that right.'" *Trichell v. Midland Credit Mgmt., Inc.*, 964 F.3d 990, 997 (11th Cir. 2020) (quoting *Spokeo*, 578 U.S. at 341) (alteration in original).

Thus, to evaluate the concreteness of an intangible injury from a statutory violation, the Supreme Court has instructed courts to look at "history and the judgment of Congress." *Spokeo*, 578 U.S. at 340. Regarding the latter, "Congress is well positioned to identify intangible harms that meet minimum Article III requirements," *id.* at 341; however, Congress may not "creat[e] new injuries out of whole cloth," *Hunstein*, 48 F.4th at 1243. For the history prong, courts "look to see if it matches up with a harm 'traditionally recognized as providing a basis for lawsuits in American courts.'" *Id.* at 1242 (quoting *TransUnion*, 141 S. Ct. at 2204). The Eleventh Circuit Court of Appeals has already undertaken such an inquiry.

Analyzing the federal TCPA, the Eleventh Circuit has held that "history and the judgment of Congress do not support finding concrete injury" for receipt of a single unsolicited text message. *Salcedo v. Hanna*, 936 F.3d 1162, 1165, 1172 (11th

Cir. 2019). The *Salcedo* court reasons that "[t]he chirp, buzz, or blink of a cell phone receiving a single text message is more akin to walking down a busy sidewalk and having a flyer briefly waived in one's face." *Id.* at 1172. Accordingly, the Court concluded that a "brief, inconsequential annoyance" is "not a basis for invoking the jurisdiction of the federal courts." *Id.*

Since *Salcedo*, federal district courts in Florida have applied this same standard to evaluating Article III standing for Florida Mini-TCPA claims. *See, e.g.*, *Fontanez v. Wolverine World Wide, Inc.*, 2022 U.S. Dist. LEXIS 232164, at *5 (M.D. Fla. Dec. 27, 2022) ("Although [*Salcedo*] concerned alleged violations of the TCPA, the same reasoning applies to the [Florida Mini-TCPA]."). In *Fontanez*, the court found that "[i]f a single text message did not constitute a concrete injury under the federal statute, it cannot constitute a concrete injury under a state law analog." *Id.*

Myriad other courts in the Eleventh Circuit have reached the same conclusion as *Fontanez*; namely, that under the TCPA and the Florida Mini-TCPA a few unsolicited text messages are not a sufficient injury to confer Article III standing. *See id.* ("Even if Fontanez received a handful of unsolicited text messages . . . she still lacks a concrete injury. As *Salcedo* reasoned, the standing inquiry is qualitative, not quantitative."); *see also Muccio v. Glob. Motivation, Inc.*, 2022 U.S. Dist. LEXIS 231882, at *9 (S.D. Fla. Dec. 22, 2022) (dismissing for lack of standing where a

plaintiff alleged five text messages that violated the Florida Mini-TCPA); *Iuliano v. UnitedHealth Grp., Inc.*, 2022 U.S. Dist. LEXIS 234335, at *3 (M.D. Fla. Dec. 9, 2022) (remanding for lack of standing with evidence of four text messages); *Frater v. Lend Smart Mortg., LLC*, 2022 U.S. Dist. LEXIS 175183, at *4 (S.D. Fla. Sept. 27, 2022) (dismissing for lack of standing a Florida Mini-TCPA class action where plaintiff alleged being "bombarded" with unsolicited text messages); *Mittenthal v. Fla. Panthers Hockey Club, Ltd.*, 472 F. Supp. 3d 1211, 1216, 1225 (S.D. Fla. July 14, 2020) (remanding for lack of standing with "around 10" text messages); *Eldridge v. Pet Supermarket Inc.*, 446 F. Supp. 3d 1063, 1070, 1072 (S.D. Fla. March 9, 2020) (remanding for lack of standing with five text messages).

These conclusions of the various district courts find their reasoning in *Salcedo* itself. There, the court explained that "Article III standing is not a 'You must be this tall to ride' measuring stick." 936 F.3d at 1172 (citations omitted). Instead, the test to determine whether an injury is concrete is qualitative, not quantitative, *id.*, "[a]nd the irritation of an unsolicited text message is qualitatively insufficient," *Fontanez*, 2022 U.S. Dist. LEXIS 232164, at *5 (citing *Salcedo*, 936 F.3d at 1172–73).

Here, the only thing Plaintiff alleges is that he was irritated and annoyed by the texts, which numbered at a dozen or less per named Defendant. This is not enough. As the court explained in *Frater*,

> The Plaintiff's allegations that she received two text messages, or even that she was "bombard[ed]" with more, do not alone suffice to clear the

jurisdictional bar. (Compl. ¶ 12.) The fact that the Plaintiff cannot identify a single specific harm she allegedly suffered, beyond offering a conclusory recitation of harms like "annoyance," "aggravation," and "wasted time," means that she has still failed to clear the qualitative floor for a concrete injury and, therefore, she (and the putative class) lacks standing to bring a claim under [Florida's Mini-TCPA].

2022 U.S. Dist. LEXIS 175183, at *8–9. So too here.

The lack of standing is glaring here, where Plaintiff does not allege that he wasted time or tangible resources because of the text messages. He does not even allege that he read the messages. He was simply annoyed, and that is not enough. *See id.* Consequently, Plaintiff has not alleged a sufficient injury to confer Article III standing, and the Court must dismiss his Complaint for lack of jurisdiction.

### B. Plaintiff's Complaint Must Also Be Dismissed Because It Fails To State A Claim Under The Florida Mini-TCPA.

#### 1. Rule 12(b)(6) Standard.

Not only has Plaintiff failed to establish Article III standing, but Plaintiff has also failed to state a valid claim under Rule 12(b)(6). Federal Rule of Civil Procedure 8(a)(2) requires a pleading contain a "short and plain statement of the claim showing that the pleader is entitled to relief." To "weed[] out meritless claims" that do not satisfy the Rule 8 pleading requirements, a defendant may file a Rule 12(b)(6) "motion to dismiss a complaint for failure to state a claim." *Fifth Third Bancorp v. Dudenhoeffer*, 573 U.S. 409, 425 (2014). While "detailed factual allegations" are not required at this stage, Rule 8 requires "more than an unadorned, the-defendant-

unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). In other words, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to state a claim for relief. *Id*. Although the Court must accept all *factual* allegations as true, that "tenet . . . is inapplicable to legal conclusions." *Id.*

Critically, *Iqbal* requires a plaintiff provide factual allegations that "permit the court to infer more than the mere possibility of misconduct." *Id*. at 679. The claim must be more than conceivable and must instead be facially plausible. *Twombly*, 550 U.S. at 570. A claim is facially plausible if "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. Plaintiff has failed to plead sufficient "factual content[;]" he has presented no allegations, taken as true, that create the reasonable inference that the NRCC sent the messages in question or that it used an ATDS to do so. *Id*. Plaintiff's claims cannot survive scrutiny under Rule 12(b)(6) and should, therefore, be dismissed with prejudice before the Parties are forced to spend unnecessary time and resources litigating claims that have no viability.

**2. By Definition, the NRCC's Activities Are Not within the Scope of the Florida Mini-TCPA's Auto-Dialer Provision.**

The Florida Mini-TCPA prohibits the use of an ATDS to make a "telephonic sales call" without prior consent from the called party. Fla. Stat. § 501.059(8)(1). It defines "[t]elephonic sales call," in relevant part, as a "telephone call, text message, or voicemail transmission to a consumer for the purpose of soliciting a sale of any *consumer goods or services*." Fla. Stat. § 501.059(1)(j) (emphasis added). It also provides that "Consumer goods or services" means "real property or tangible or intangible personal property that is normally used for personal, family, or household purposes . . . ." Fla. Stat. § 501.059(1)(c).

Plaintiff uses this language—and numerous pages of his brief—to argue that the NRCC attempted to sell him the consumer goods via text message. (*See* ECF No. 1 at 4–8, 11.) He is incorrect. The NRCC is a National Party Committee, *see* 11 C.F.R. § 100.5(e)(4), and is, therefore, regulated by federal campaign finance law, which treats merchandise purchases for political committees as political contributions and not consumer transactions, *see, e.g.*, 11 C.F.R. § 100.53 ("[T]he entire amount paid as the purchase price for a fundraising item sold by a political committee is a contribution.").

When a committee—such as the NRCC—sells fundraising[3] merchandise, the "entire amount paid as the purchase price" for that merchandise is considered a political "contribution" and not a consumer good. *Id.*; *see also* Committee to Re-

---

[3] Plaintiff even alleges that the NRCC is a "fundraiser." (ECF No. 1 at ¶ 44.)

Elect Virginia Smith to Congress, Fed. Elec. Comm'n Advisory Op. 1990-26, at 1–2 (January 18, 1991) (explaining that the FEC has generally viewed "the sale or commercial use of committee assets by a . . . political committee to be fundraising for political purposes"); Palmer, Fed. Elec. Comm'n Advisory Op. 1995-24 (August 18, 1995) (concluding that the proceeds from the sale of books by authorized committee constitute contributions in the full amount paid by the purchaser).

Simply put, political contributions—even when made in exchange for merchandise—are not the sale of consumer goods. Therefore, the Florida Mini-TCPA is inapplicable to the alleged conduct here. For this reason alone, the Court should dismiss Plaintiff's Complaint.

> **3. Plaintiff Has Failed to State a Claim Because He Has Not Alleged Facts to Indicate That the NRCC Used an ATDS— In Fact, He Has Alleged Facts That Demonstrate the Opposite.**

Even if the Florida Mini-TCPA is appliable here, Plaintiff has failed to plead facts sufficient to establish a claim under that statute.

As an initial matter, courts routinely use federal TCPA jurisprudence as a tool for interpreting state mini-TCPA statutes, including the Florida Mini-TCPA. *See, e.g.*, *Fontanez*, 2022 U.S. Dist. LEXIS 232164, at *5 ("Although [Salcedo] concerned alleged violations of the TCPA, the same reasoning applies to the Florida Mini-TCPA]."); *Frater*, 2022 U.S. Dist. LEXIS 175183, at *8 (analyzing a Florida Mini-TCPA claim under the same framework as the federal TCPA); *Calvin v.*

*Humana Inc.*, 2022 U.S. Dist. LEXIS 148195, at *9–11 (S.D. Fla. Aug. 18, 2022) (same); Moreover, the FTSA, like its federal counterpart the Telephone Consumer Protection Act ("TCPA"); *Leigue v. Everglades Coll., Inc*., 2022 U.S. Dist. LEXIS 191834, at *9 (S.D. Fla. Oct. 20, 2022) (acknowledging that the TCPA is the "federal counterpart" to the Florida Mini-TCPA).

This makes sense given the similarities between the two statutes—for example, the elements required to prove an Auto-Dialer claim are the same under both the federal TCPA and Florida Min-TCPA. The Florida Mini-TCPA is violated when (1) "[a] person . . . make[s] or knowingly allow[s] a telephonic sales call to be made," (2) with an "automated system for the selection or dialing of telephone numbers," and (3) does so "without the prior express written consent of the called party." Fla. Stat.§ 501.059(8)(a). Similarly, a violation under the federal TCPA occurs when: "[A]ny person within the United States . . . make[s] any call . . . using any automatic telephone dialing system . . . to any telephone number assigned to a . . . cellular telephone service . . . " 47 U.S.C. § 227(b)(1)(A)(iii).

Thus, for Plaintiff's Complaint to survive a Rule 12(b)(6) motion to dismiss, he "must allege that the [D]efendant (1) called [his] cellular telephone number, (2) used an automatic telephone dialing system . . . to do so, and (3) lacked the plaintiff's prior express consent." *Aquilar v. Ocwen Loan Servicing, LLC*, 289 F. Supp. 3d 1000, 1005 (D. Minn. 2018); Fla. Stat.§ 501.059(8)(a). Should he fail to

properly plead any of those elements, he has failed to state a claim upon which relief can be granted under Rule 12(b)(6). *See id.* at 1005–06.

Here, Plaintiff has failed to alleged facts sufficient to make out an Auto-Dialer claim under either statute because Plaintiff has not alleged facts sufficient to demonstrate that the NRCC contacted him via an ATDS.

Although the Florida Mini-TCPA does not define what it means by an "automated system for the selection or dialing of telephone numbers," the Supreme Court has recently spilled much ink in explaining what an ATDS means in the TCPA context. The U.S. Supreme Court recently held that, to qualify as an ATDS, a device used to place a call—or in this case, send a text—"must have the capacity *either* to *store* a telephone number using a random or sequential [number] generator or to *produce* a telephone number using a random or sequential number generator." *Facebook, Inc.*, 141 S. Ct. at 1167 (emphasis added); *see also Dominguez v. Yahoo!, Inc.*, 2017 U.S. Dist. LEXIS 11346, at *3–4 (E.D. Pa. Jan. 27, 2017), *aff'd*, 894 F.3d 116 (3d Cir. 2018) (explaining that an ATDS must use a "random or sequential" number generator to either store or produce numbers and that "the phrase refers to the numbers themselves rather than the manner in which they are dialed"). Simply put, if Plaintiff failed to properly allege NRCC used a random or sequential number generator to either "store" or "produce" the number in question, then he has failed

to properly allege the use of an ATDS—and thereby failed to state a claim upon which relief can be granted. *See Facebook, Inc.*, 141 S. Ct. at 1167.

The TCPA defines an ATDS or an autodialer as "equipment which has the capacity (A) to store or produce telephone numbers to be called, using a random or sequential number generator; and (B) to dial such numbers." 47 U.S.C. § 227(a)(1). And as noted above, the U.S. Supreme Court has provided important context regarding the sort of equipment that constitutes an ATDS. *Facebook*, 141 S. Ct. at 1167.[4] The Court made clear that the statutory definition encompasses only those devices that "have the capacity either to store a telephone number using a random or sequential generator or to produce a telephone number using a random or sequential number generator." *Id*. As such, Plaintiff must include some "factual content" showing NRSC used a random or sequential number generator to either "store" or "produce" the telephone number in question. *Iqbal*, 556 U.S. at 678. Plaintiff has shown neither.

---

[4] District courts have already begun applying the narrow ATDS definition elucidated in *Facebook* in other TCPA cases, and in some instances have even narrowed it further. *See, e.g.*, *McEwen v. Nat'l Rifle Ass'n of Am. et al.*, 2021 U.S. Dist. LEXIS 72133, at *19 (D. Me. Apr. 14, 2021) ("After the *Duguid* opinion, the ATDS portion of the claim requires an allegation that [Defendant] used a random or sequential number generator to place a call to Plaintiff's cellphone, not merely a claim that its dialing system has that capability."). In addition, the U.S. Supreme Court has also recently vacated rulings from other circuits that adopted the broader definition of an ATDS. *See, e.g.*, *La Boom Disco, Inc. v. Duran*, 141 S. Ct. 2509 (2021) ("Judgment vacated, and case remanded to the United States Court of Appeals for the Second Circuit for further consideration in light of *Facebook*[.]").

At the motion to dismiss stage, a plaintiff must properly allege sufficient facts that, taken as true, could lead to the reasonable inference NRCC used an ATDS. *See Iqbal*, 556 U.S. at 678; *see also White v. Synchrony Bank*, 2015 U.S. Dist. LEXIS 134629, at *5 (M.D. Fla. Oct. 2, 2015) (explaining that, to avoid dismissal, a plaintiff must properly allege "circumstances surrounding the call sufficient to create a plausible inference that the call was made using an ATDS.") (quoting *Reid v. GE Capital Retail Bank*, 2014 U.S. Dist. LEXIS 170267, at *2 (S.D. Ga. Dec. 9, 2014)). Here the facts alleged by Plaintiff indicate that the NRCC did **not** use an ATDS.

First, although Plaintiff contends that an ATDS was used, he **does not** allege anywhere in the Complaint that the NRCC used a random or sequential number generator to either "store" or "produce" the number in question. The absence of such an allegation alone is damning to his case. *See Franklin v. Hollis Cobb Assocs.*, 2022 U.S. Dist. LEXIS 178203, at *6 (N.D. Ga. Sep. 29, 2022) ("The Supreme Court held in *Facebook, Inc. v. Duguid* that "to qualify as an ATDS, a device must have the capacity (1) either to store a telephone number using a random or sequential generator, and (2) to dial such numbers."" (citing 141 S. Ct. at 1167) (cleaned up)).

Second, as Plaintiff himself alleges, the text messages sent to Plaintiff were personalized, (*see* ECF No. 1 at ¶¶ 40, 43–44) ("The NRCC's text messages addressed Raleigh by name, which indicates they knew who they were contacting."), which indicates that an ATDS was **not** used. Courts routinely find the "impersonal"

nature of a text message as indicative of the use of an ATDS. *See Deleo*, 2021 U.S. Dist. LEXIS 210858, at *16 (collecting cases). Here, however, Plaintiff alleges the contrary—*i.e.*, that the text messages sent to him were *personalized* to him. This does not indicate the use of an ATDS. *See Camunas I*, 541 F. Supp. 3d at 603; *see also Deleo*, 2021 U.S. Dist. LEXIS 210858, at *17–18.

Third, as Plaintiff alleges, the phone numbers from which the texts were sent utilized a long code (*i.e.*, full nine-digit phone number) as opposed to a short code, (ECF No. 1 at ¶ 26), which indicates that an ATDS was **not** used. Many courts have held that a defendant's use of a "vanity short code" when sending a text is sufficient to indicate an ATDS. *See Camunas v. Nat'l Republican Senatorial Comm*., 541 F. Supp. 3d 595, 603 (E.D. Pa. 2021) (collecting cases to illustrate that courts consider the length of the number contacting a plaintiff to indicate whether or not an ATDS was used); *Deleo*, 2021 U.S. Dist. LEXIS 210858, at *16 (same). Here, however, Plaintiff has not and cannot allege a short code was used. According to the Complaint, all five message received by Plaintiff originated from a full, nine-digit number (*i.e.*, a long code). (ECF No. 1 at ¶ 26); *Mantha v. QuoteWizard.com, LLC*, 2020 U.S. Dist. LEXIS 45481, at *3 (finding that allegations regarding use of "a long code does not . . . support a plausible inference that an ATDS was used.") (emphasis omitted).

Fourth, as Plaintiff himself alleges, when he text one of the numbers, the lines

were responsive, (ECF No. 1 at ¶ 40), which indicates that an ATDS was **not** used. *See Deleo*, 2021 U.S. Dist. LEXIS 210858, at \*17–18 (dismissing an Auto-Dialer claim where the complaint did not "indicate an inability to respond or interact with the messages" or "assert the text messages came from a non-working number"). Again, Plaintiff alleges facts that are the exact opposite of what one would expect if an ATDS was used.

Put simply, Plaintiff has pleaded himself out of an Auto-Dialer claim. Every fact that Plaintiff alleges to purportedly demonstrate the use of an ATDS instead demonstrates the opposite. Indeed, it demonstrates the opposite because an ATDS was not in fact used here. The NRCC does not use an ATDS to solicit political donation from individuals who was not agreed to the use of an ATDS.

Plaintiff makes one additional frustrated allegation to support his claim that an ATDS was used here: "the NRCC sends millions of text messages into Florida every year." (ECF No. 1 at ¶ 46). As an initial matter, Plaintiff does not allege that he personally received millions of texts from the NRCC; in fact, he only claims to have received five. Putting the slim nature of Plaintiff's allegations aside, however, it is entirely technologically possible to manually produce thousands of text messages per day without resorting to an ATDS using peer-to-peer texting platforms ("P2P"). The FCC considered the legality of P2P texting under the TCPA in a 2020 Declaratory Ruling, holding that "the fact that a calling platform or other equipment

is used to make calls or send texts to a large volume of telephone numbers is not probative of whether that equipment constitutes an [ATDS] under the TCPA." Fed. Comms. Comm'n, *In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991* ¶ 3, CG Docket No. 02-278 (June 25, 2020). As explained above, the Supreme Court held in *Facebook* that a device "must have the capacity either to store a telephone number using a random or sequential [number] generator or to produce a telephone number using a random or sequential number generator" to be considered an autodialer under the TCPA. *Facebook, Inc.*, 141 S. Ct. at 1167. Plaintiff has not demonstrated with factual support why he thinks Defendant used an ATDS, and sheer volume alone will not satisfy his pleading burden.

*     *     *     *

Put simply, Plaintiff lacks Article III standing to bring his claims under the Florida Mini-TCPA because he lacks a sufficient injury. And, even if he had standing, Plaintiff has failed to plead facts sufficient to show that the NRCC used an ATDS to contact him. Indeed, Plaintiff's alleged facts demonstrate the contrary. Plaintiff's Complaint must, therefore, be dismissed. Moreover, because Plaintiff's complaint is both factually and legally deficient, there is no scenario in which an amended pleading could alter this result, and the Court's dismissal should be with

prejudice.[5]

## III.   <u>CONCLUSION</u>

For the above reasons, this Court should dismiss Plaintiff's Complaint either for lack of standing, or dismiss it with prejudice for failure to state a claim.

## IV.   <u>PRAYER FOR RELIEF</u>

Defendant prays that the Court:

(1) Dismiss this putative Class Action Complaint with prejudice; and

(2) Award Defendant reasonable attorney fees and costs in accordance with Fla. Stat. § 501.059(11)(a).

Dated: January 17, 2023.

Respectfully submitted,

<u>/s/ Jason Torchinsky</u>
Jason Torchinsky (VA Bar # 47481)
Holtzman Vogel Baran Torchinsky &
Josefiak PLLC
15405 John Marshall Hwy
Haymarket, Virginia 20169
jtorchinskty@holtzmanvogel.com
(540) 341-8808 (phone)
(540) 341-8809 (fax)

---

[5] "A district court need not . . . allow an amendment where . . . amendment would be futile." *Bryant v. Dupree*, 252 F.3d 1161, 1163 (11th Cir. 2001). A proposed amendment would be futile "when the complaint as amended would still be properly dismissed." *Coventry First, LLC v. McCarty*, 605 F.3d 865, 870 (11th Cir. 2010) (quotation marks omitted). Here, no amendment to Plaintiff's Complaint will change the fact that he has failed to state a claim because it is an issue of law. Therefore, amendment would be futile, and the Complaint should be dismissed with prejudice.

/s/ Gary Perko
Gary Perko (FL Bar # 855898)
119 S. Monroe St. Suite 500
Tallahassee, FL 32301
gperko@holtzmanvogel.com

/s/ Dallin B. Holt
Dallin B. Holt (AZ Bar # 37419)*
Esplanade Tower IV
2575 East Camelback Rd
Suite 860
Phoenix, AZ 85016
dholt@holtzmanvogel.com

*pro hac vice forthcoming*

*Attorneys for Defendant, National Republican Congressional Committee*

## CERTIFICATE OF SERVICE

The undersigned also hereby certifies that a true and correct copy of the above and foregoing document has been served on all counsel *via ECF* on this January 17, 2023.

*/s/ Jason Torchinsky*
Jason Torchinsky

## CERTIFICATE OF COMPLIANCE

The undersigned hereby certify that this Memorandum in Support Defendant's Motion to Dismiss contains 5,075 words and complies with N.D. Fla. Loc. R. 7.1.

/s/ Jason Torchinsky
Jason Torchinsky